Matthew H. Schwartz, Esq. CA SBN 161765
SCHWARTZ LAW CENTER, LLC
2985 Gordy Parkway, Suite 550
Marietta, Georgia 30066-3078
Telephone: (678) 401-2400
Facsimile (678) 669-1776
Email address: matt@schwartzlawgroup.com

Michael F. Frank, Esq. CA SBN 125149
MICHAEL F. FRANK, ATTORNEY AT LAW
9903 Santa Monica Blvd., Suite 924
Beverly Hills, California 90212
Telephone: (310) 277-2559
Facsimile: (866) 279-2860
Email address: mfrankatty@aol.com

Attorneys for Plaintiffs
    PRATHER JACKSON
 and HOLLYWOOD WEEKLY MAGAZINE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

| | |
|---|---|
| PRATHER JACKSON, HOLLYWOOD WEEKLY MAGAZINE, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>NETFLIX, INC.; IMAGINE TELEVISION, LLC, a Delaware limited liability company dba IMAGINE TELEVISION STUDIOS; CBS TELEVISION STUDIOS aka CBS TELEVISION STUDIOS, INC., a Delaware corporation; and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.: 2:20-CV-6354<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF:**<br><br>**(1) Federal Trademark Infringement [15 *U.S.C.* § 1114 / Lanham Act § 43(a)]**<br>**(2) Federal Copyright Infringement [17 *U.S.C.* § 501(a)]**<br>**(3) False Designation of Origin [15 *U.S.C.* § 1125(a)]**<br>**(4) Trademark Dilution [15 *U.S.C.* § 1125(c).); *California Business & Professions Code* § 14330]**<br>**(5) Common Law Copyright Infringement [*California Civil Code* § 980]**<br>**(6) Unfair Business Practice [*California Business & Professions Code* § 17200]; and**<br>**(7) Unjust Enrichment**<br>**(8) Federal Trademark Infringement [15 *U.S.C.* § 1114 / Lanham Act § 43(a)]** |

COME NOW, plaintiffs, PRATHER JACKSON ("Jackson") and HOLLYWOOD WEEKLY MAGAZINE, LLC ("HWM") (collectively the "Plaintiffs"), that hereby file their complaint (the "Complaint") against defendants NETFLIX, INC. ("Netflix"); IMAGINE TELEVISION, LLC, a Delaware limited liability company dba IMAGINE TELEVISION STUDIOS ("Imagine"); CBS TELEVISION STUDIOS aka CBS TELEVISION STUDIOS, INC., a subsidiary of CBS Entertainment Group, a unit of VIACOMCBS formed by CBS CORPORATION as CBS PARAMOUNT TELEVISION merging PARAMOUNT TELEVISION and CBS PRODUCTIONS aka CBS TELEVISION SERVICE, INC., a Delaware corporation ("CBS"); and DOES 1-10, Inclusive (collectively the "Defendants").

## JURISDICTION AND VENUE

1.      This Court has Federal subject matter jurisdiction over this matter pursuant to 28 *U.S.C.* §§ 1331 and 1338(a) and (b), by virtue of 15 *U.S.C.* § 1051 *et seq.*, in that the case arises out of § 43(a) of the *Lanham Act* for trademark infringement, and supplemental jurisdiction under 28 *U.S.C.* §§ 1367(a) and 1338 (a)(b).

2.      Venue is proper, *inter alia*, under 28 *U.S.C.* § 1391(b) because on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

3.      Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in California and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the State of California, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process. Defendants register as foreign corporations or companies in the State of California and/or utilize the County of Los Angeles Fictitious business name filings and publications therein and utilize streaming, internet, publishing, and the web directed and targeted towards customers, consumers, and others that are located in the State of California.

MICHAEL F. FRANK, ATTORNEY AT LAW
9903 Santa Monica, Suite 924
Beverly Hills, CA 90212
(310) 277-2559

## THE PARTIES

4. Plaintiff Jackson is now, and was at the time of the filing of this Complaint and at all intervening and relevant times, a California and Los Angeles County resident, conducting business in California and the County of Los Angeles and principal place of business in California and the County of Los Angeles.

5. Plaintiff HWM is now, and was at the time of the filing of this Complaint and at all intervening and relevant times, a California limited liability company, duly authorized and licensed to conduct business in California, with its principal place of business in California.

6. Plaintiff HWM conducts media sales and disseminates and distributes a media entertainment publication [including entertainment, politics, diplomacy, and world-related issues] that has a global readership, a substantial portion of which is situated in the County of Los Angeles, State of California and HWM maintained an office at Sunset Gower Studios ("SGS") from 2008-2015 whereby with an agreement with SGS CEO Howard Stern in exchange for coverage of select tenants, and HWM arranged for the placement of its magazines in the main SGS lobby which permits high-end foot traffic of entertainment industry customers and readers and continuing such base of readers through the present.

7. Plaintiff Jackson has been at all relevant times and is the founder and publisher of Hollywood Weekly Magazine ("HWM"), the creators and owners of the subject trademarks in this Complaint ("Mark1" and "Mark2") for which an application with the Patent and Trademark Office has been filed for such Mark1 and registered Mark2 and the creator and the sole owner of HWM as well as the creator and/or assignee on a written work for hire agreement and copyright owner of the subject work of art subject publication in this Complaint (the "Publication") for which copyright application and protection has been sought and obtained.

8. Hard copies of HWM publications are distributed in over 300 locations across the country by Mader News and Books-A-Million brick and mortar stores and in 210 international locations consisting mostly of airports, rail stations and resorts, and such publications are also distributed extensively on-line at Issuu.com and are available for

consumption on multiple social media platforms (e.g., Facebook®, Instagram®, Twitter®, etc.) with HWM readership based in the United States, Europe, Africa, India and Asia.

9. For the last seven years, HWM has been producing an annual international film festival called the *Hollywood Weekly Magazine Film Festival* by which its brand is promoted internationally. HWM also conducts an annual, high profile pre-Grammy Awards party to further promote its brand.

10. Plaintiffs are informed and believe that defendant Netflix is the writer, producer, owner, and distributor of a streaming video 8-episode series created in 2020 entitled the "Tiger King: Murder, Mayhem and Madness" (the "Series") along with and in collaboration with defendant producers Imagine and CBS.

11. Defendant Netflix is now, and was at the time of the filing of this Complaint and at all intervening and relevant times, a Delaware corporation, duly authorized and licensed to conduct business in California, operating in California, distributing to customers in California, with its principal place of business in California at 100 Winchester Circle in the City of Los Gatos with zip code 95032.

12. Defendant Imagine is now, and was at the time of the filing of this Complaint and at all intervening and relevant times, a Delaware limited liability company, duly authorized and licensed to conduct business in California, operating in California, distributing to customers in California, with its principal place of business in California at 150 South El Camino Drive, Suite 100 in the City of Beverly Hills with zip code 90212.

13. Defendant CBS is now, and was at the time of the filing of this Complaint and at all intervening and relevant times, a Delaware corporation, duly authorized and licensed to conduct business in California, operating in California, distributing to customers in California, with principal places of business in California at 7800 Beverly Boulevard zip code 90036 and in New York at 51-W.52nd Street with zip code 10019.

///

///

///

14. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants herein are designated by fictitious names and Does 1-10, inclusive, are unknown to Plaintiffs. Plaintiffs therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend the Complaint accordingly.

15. Plaintiffs further allege that Does 1-10, inclusive, sued herein by fictitious names are jointly, severally and concurrently liable and responsible with the named Defendant upon the claims herein set forth.

16. Plaintiffs are informed and believe and thereon allege that at all times mentioned herein the Defendants were the agents, servants, parents, subsidiaries, associates, joint venturers, collaborators, and employees of every other Defendant and the acts of each Defendant, as alleged herein, were performed within the course and scope of that agency, service, agreement or employment.

## INJURY TO PLAINTIFFS

17. The Mark1 was coined by Plaintiffs in 2013 and (until Defendants' illicit use in 2020) was used exclusively in connection with Plaintiffs' numerous magazines that specifically profiled famous/infamous Joseph Allen Maldonado-Passage, a.k.a. *Joe Exotic*. Joe Exotic is the former owner and operator of a zoo in Oklahoma, a breeder of tigers, lions and related species, and a possible former associate of law enforcement and politicians who had a feud with competitor Carole Baskin. Joe Exotic was eventually convicted for a murder-for-hire plot to kill Baskin and is currently serving a 22-year federal prison sentence (the "Exotic Life"). The Mark2 is used exclusively in connection with branding Plaintiffs' Publication and promotional events, and is prominently visible across the cover of each magazine. The Mark2 is exclusively associated with the Plaintiffs herein.

18. The Mark1 United States trademark registration information for the application is serial number 90033173 (first use in April 2013 and first use in interstate commerce May 1, 2013); and Mark2 United States trademark registration information is serial number 87063776 (first use and commercial use in 2001) with registration number 5244222.

19. The Publication consists of four feature exposes written by and/or assigned to the Plaintiffs between 2013 and 2018. The Publication chronicles the life of Joe Exotic and created, developed, coined, and used the Mark1 (i.e., the "Tiger King") and the Mark2 (i.e., "Hollywood Weekly").

20. The Publication United States copyright certificate information numbers for registration for the 2013 Publication are 1-8721835084 and 1-8722123556 with copyright registration numbers *TX0008866617 and VA0002206806.*

21. Plaintiffs designed, created, developed, marketed, distributed, disseminated, and sold media – a magazine focusing on entertainment and culture – and involving in 2013 the first of four articles that is the basis for the "Tiger King" – the Publication - and coining the name as well, namely containing the Mark1.

22. Plaintiffs are the recipients of numerous awards for excellence in journalism for which some of the awards include the *Arts for Peace Award* for the Plaintiffs' work using arts to advance peace, the *World Class Excellence Award* for the plaintiffs' work in the Philippines, the *Nollywood and Africa Film Critics Award* recognized for the Plaintiffs' work in Africa, and distributed to the United Nations General Assembly through the Office of the Prime Minister of India.

23. HWM's brand has always adhered to a strict "No Gossip" policy for which HWM obtained a United States trademark with registration number 5244222 and United States copyright certification numbers 1-8721835084 and 1-8722123556 with copyright registration numbers *TX0008866617 and VA0002206806.*

24. Recently after the Series was distributed for streaming, Plaintiffs for the first time were receiving comments from advertisers as to when HWM became a tabloid gossip magazine when the fundamental pillar of HWM is and always has been "No Gossip, Strictly Entertainment" and always highly respected and well-known for this brand.

25. Plaintiffs have spent hundreds of thousands investing and 20 years developing and maintaining HWM as a "No Gossip, Strictly Entertainment" family wholesome brand and simply use entertainment as a universal language.

26. Recently after the Series was distributed for streaming, HWM advertisers have wanted to cancel due to the confusion and very easily plausible and obvious connection between the Series and HWM due to the prominent use of the Plaintiffs' Mark1, Mark2 and the Publication itself in various episodes of the Series without any permission, license, or authority from Plaintiffs whatsoever.

27. The advertisers were extremely upset causing Plaintiffs to be in shock. They disclosed to Plaintiffs that the Series they watched was a tawdry television program which featured Plaintiffs' Mark1 in the name of the Series associated it with Plaintiffs, and Plaintiffs Publication and Mark2 were physically used and displayed in the Series as well as the Mark1 being prominently displayed and spoken about throughout the Series. This had the effect of tying the Plaintiffs to the Series without any compensation, release, permission, license, nor assignment thereof, and causing Plaintiffs problems with advertisers and customers, and completely turning "No Gossip, Strictly Entertainment" HWM decades and expensive creation on its head.

28. Plaintiffs then could find the Series plastering the Mark1 on the internet world wide web, Google® page 1 searches, IMdb® website, Netflix website, entertainment reviews and consumers posting derogatory comments regarding HWM negatively impacting Plaintiffs, and associating the Mark1 with Netflix as well as the use of the Publication in the Series.

29. Defendants have conducted unauthorized use of the Mark1, Mark2 and Publication and must cease and desist forthwith and are subject to an injunction to do so immediately.

30. The Publication clearly served as the blueprint, concept, and basis for the Series and the misappropriated use of the Mark1 in the Series name, title, and content.

31. The Series was filmed from 2015 through 2019 and debuted in 2020, and the subtitle used for the Series shows that the Series was from the Publication and used the Mark1 from 2013.

///

///

32. In 2013, the only name for subject Joseph Allen Maldonado-Passage was *Joe Exotic* until the Publication and Mark1 was invented, created, disseminated, and published for which the Defendants absconded and utilized same without authorization nor permission.

33. The Series literally uses the Mark1 in its title, throughout the video, and then even shows issues of the HWM Publication itself within the video Series as well showing that they knew about it, accessed it, had access to it, and were even using it in the Series itself, thus establishing the Mark1 was neither separately created nor developed by Defendants.

34. Excerpts from the Publication have been harvested by Defendants for use in the Series.

35. Plaintiffs have been damaged by no compensation for use of the Mark1 and Publication from the unauthorized use by the Defendants, loss and potential future loss of advertisers, loss of readers and customers, and damage to the reputation and hallmark of the Plaintiffs their lack of drama and gossip and merely high-class entertainment for which the Plaintiffs have distinguished themselves greatly and uniquely.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT**
**(Plaintiffs against Defendants)**
**[15 *U.S.C.* § 1114 / Lanham Act § 43(a)]**

36. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-35.

37. Defendants are actually aware that Plaintiffs have sought and applied for a trademark of the Mark1.

38. Defendants used the Publication containing the Mark1 in their Series.

39. Defendants obtained the Mark1 from the Publication used in the Series.

40. Defendants knew who owned and created the Mark1 from the 2013 Publication itself used in the Series.

41. Defendants did not and failed to obtain the consent or authorization of Plaintiffs as the owners and creators of the Mark1 since 2013 to commercially distribute and market the Mark1 as part of the Series title and also used in the Series.

///

42. Defendants intentionally and knowingly used in commerce the reproduction, counterfeit, copy and/or colorable imitation and exact representation of Plaintiffs' Mark1 in connection with the use, sale, offering for sale, distribution, dissemination, product, and advertising of Plaintiffs' Mark1 as the title of the Series and used in the Series.

43. Defendants continued and knowing use of Plaintiffs' Mark1 without Plaintiffs' consent and authorization constitutes intentional infringement of Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' trademarks in violation of section 32 of the *Lanham Act,* 15 *U.S.C.* § 1114 for which federal registration is pending.

## SECOND CLAIM FOR RELIEF
## FEDERAL COPYRIGHT INFRINGEMENT
**(Plaintiffs against Defendants)**
**[17 *U.S.C.* § 501(a)]**

44. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-43.

45. Plaintiffs are the exclusive owners/assignees of the copyright in its Publication (certificate numbers 1-8721835084 and 1-8722123556 with copyright registration numbers *TX0008866617 and VA0002206806*).

46. Defendants have actual notice of Plaintiffs' exclusive copyright rights in the Publication.

47. Plaintiffs' trademark registration application on the Principal Register of the United States Patent and Trademark Office further provide constructive notice of Plaintiffs' ownership rights in the Publication through the Mark1 that appears as part of the Publication.

48. Defendants did not seek and failed to obtain Plaintiffs' consent or authorization to utilize, manufacture, reproduce, copy, display, commercially distribute and market in commerce or otherwise the Publication.

49. Without permission, Defendants intentionally and knowingly reproduced, counterfeited, copied, displayed, used, based upon, used as a blueprint, and took excerpts of the Publication by creating, offering, advertising, promoting, producing, disseminating, selling, and distributing the Series.

///

MICHAEL F. FRANK, ATTORNEY AT LAW
9903 Santa Monica, Suite 924
Beverly Hills, CA 90212
(310) 277-2559

50. Defendants intentionally and willfully applied their infringing uses of the Publication to signs about the Series, advertising about the Series, creation and development of the Series, production of the Series, offer for streaming and sale of the Series, internet world wide web marketing of the Series, distribution of the Series., and utilized the actual Publication itself within the video Series. Defendants thereupon widely, publicly, and continuously offered, advertised, promoted, retailed, sold, and distributed infringing video Series based upon, created from, and containing the Publication.

51. Defendants continue its infringement of the Publication in blatant disregard of Plaintiffs' protected rights.

**THIRD CLAM FOR RELIEF**
**FALSE DESIGNATION OF Origin**
**(Plaintiffs against Defendants)**
**[15 *U.S.C.* § 1125(a)]**

52. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-51.

53. Defendants' conduct described above violate the *Lanham Act*, have unfairly competed with and injured and, unless immediately restrained, will continue to injure Plaintiffs, causing damage to Plaintiffs in an amount to be determined at trial, and will cause irreparable injury to Plaintiffs' goodwill and reputation associated with the value of Plaintiffs' Mark1.

54. Defendants have the legal obligation and responsibility to conduct a search before utilizing a trademark so as not to confuse or deceive consumers as to the origin of its name and Mark1. Had Defendants conducted a search they would have discovered Plaintiffs' long-time use of the its Mark1 in commerce since 2013 as well as having utilized the Publication that contained the Mark1 and showed its creator Plaintiffs within the Publication itself and such Publication was actually used within the video Series itself by Defendants.

55. Plaintiff's Mark1 is distinctive [in the states in which trademark registration was obtained] by virtue of its substantial inherent and acquired distinctiveness, extensive use [in each state in which registration was obtained], and the extensive advertising, use, and publicity of the Mark1 including utilization in the Publication that was used in the Series

itself.

56. Defendants' egregious and intentional use and sale of the video Series bearing Plaintiffs' Mark1 in the Series title and within the video Series itself unfairly competes with the Plaintiffs and is likely to cause confusion, mistake, association, or to deceive, mislead, betray, and defraud consumers, advertisers, and readers to believe that the substandard and dramatic video Series production is somehow associated with the Plaintiffs by use of the Mark1 in title and within the Series itself or that the video Series is based upon the Mark1 with Plaintiffs' permission and authority.

57. Defendants' continuing and knowing use of Plaintiffs' Mark1 constitutes willful infringement, false designation of origin and unfair competition in violation of Section 43(a) of the *Lanham Act,* 15 *U.S.C.* § 1125(a).

### FOURTH CLAIM FOR RELIEF
### TRADEMARK DILUTION [Dilution by Tarnishment]
### (Plaintiffs against Defendants)
### [15 *U.S.C.* § 1125(c.); *California Business & Professions Code* § 14330]

58. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-57.

59. Plaintiffs Mark1 is "famous" within the meaning of the Lanham Act and is distinctive [in the states in which trademark registration was obtained] by virtue of the substantial inherent and acquired distinctiveness of the Mark1, the extensive use [in relevant states], and the wide advertising and publicity of Plaintiffs' Publication bearing the Mark1 and the Mark1 used in the Defendants' Series and with the Publication utilized with the Defendants' video Series itself.

60. As a result of the substantial inherent and acquired distinctiveness in Plaintiffs' Mark1, extensive use [in the states in which trademark registration was obtained] and the wide advertising and publicity of the Mark1, Plaintiffs' Mark1 has become strong and is widely identified and respected.

///

///

///

61. Upon information and belief, Defendants' unlawful actions began long after Plaintiffs' Mark1 became famous, and Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiffs' reputation, cleverness, and creativity and to dilute Plaintiffs' Mark1. Defendants' conduct is willful, wanton and egregious.

62. The actions of Defendants complained of herein are likely to injure the business reputation of Plaintiffs and its Mark1.

63. Defendants' intentional sale, streaming, distribution of pirated, absconded, and counterfeit video Series bearing Plaintiffs' Mark1 in the title and within the video Series competes with Plaintiffs and is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers, advertisers, and readers to believe that the substandard use associates Plaintiffs with Defendants in some way or degrades a family wholesome and no gossip reputation to dramatic and less wholesome.

64. Defendants' unauthorized and counterfeit use of Plaintiffs' famous Mark1 has diluted and will continue to dilute and tarnish Plaintiffs' name and Mark1, and is likely to detract from the distinctiveness and use of Plaintiffs' Mark1.

65. Defendants' conduct is intended to trade on Plaintiffs' reputation and goodwill and the quality and high standards of Plaintiffs' Publication and media. Defendants' failure to meet Plaintiffs' strict non-dramatic no gossip bent will mar the perception among consumer, readers, and advertisers regarding Plaintiffs' Publication and media, will tarnish and dilute the strength and value of Plaintiffs' Mark1, and will saturate the market with a substandard use.

66. Defendants' egregious and intentional use and sale of the video Series bearing Plaintiffs' Mark1 in the Series title and within the video Series itself is likely to cause confusion, mistake, association, or to deceive, mislead, betray, and defraud consumers, advertisers, and readers to believe that the substandard and dramatic video Series production is somehow associated with the Plaintiffs by use of the Mark1 in title and within the Series itself or that the video Series is based upon the Mark1 with Plaintiffs' permission and authority.

///

///

67. Defendants' continuing and knowing use of Plaintiffs' Mark1 constitutes intentional infringement of Plaintiffs' common law trademarks in violation of 15 *U.S.C.* § 1125(c.) and California common law, as well as dilution and injury to business reputation in violation of *Cal. Bus & Prof. Code* § 14330 *et seq.*

68. Plaintiffs have no adequate remedy at law to compensate it fully for the damages that have been caused and will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

**FIFTH CLAIM FOR RELIEF**
**COMMON LAW COPYRIGHT INFRINGEMENT**
**(Plaintiffs against Defendants)**
**[*California Civil Code* § 980]**

69. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-68.

70. At all times relevant herein, Plaintiffs have held and still hold the exclusive rights under California law and common law to reproduce, distribute, license, or disseminate the reproduction and distribution of the work, creation, representation, and development for its Mark1 and Publication in any and all formats and mediums, throughout the United States.

71. The work, creation, representation, and development of Plaintiffs' Mark1 and Publication are original works in tangible form which have been widely disseminated and published since 2013.

72. The conduct herein complained of was extreme, outrageous, fraudulent, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights. Defendants' acts have irreparably harmed and continue to harm Plaintiffs' exclusive proprietary rights and constitute common law copyright infringement and unfair competition. Defendants' outrageous conduct supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Defendants and to deter them from similar conduct in the future. And as to those non-individual Defendants such conduct was ratified by their owners and management.

///

///

MICHAEL F. FRANK, ATTORNEY AT LAW
9903 Santa Monica, Suite 924
Beverly Hills, CA 90212
(310) 277-2559

73. Each infringing transfer, duplication, sale, rental, stream, purchase, distribution, display, and other exploitation of the work, creation, representation, and development of Plaintiffs' Mark1 and Publication constitutes a separate claim against Defendants under common law copyright and *California Civil Code* § 980.

**SIXTH CLAIM FOR RELIEF**
**UNLAWFUL, UNFAIR and FRAUDULENT BUSINESS PRACTICES**
**(Plaintiffs against Defendants)**
**[*California Business & Professions Code* § 17200]**

74. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-73.

75. Defendants have committed all of the aforesaid acts of infringement deliberately, willfully, maliciously and oppressively, without regard to Plaintiffs' legal, contractual, and exclusive proprietary rights.

76. Defendants' acts and practices as detailed above constitute acts of unlawful, unfair or fraudulent business acts and practices within the meaning of *California Business & Professions Code* § 17200.

77. Defendants have engaged in transactions that are in violation of numerous provisions of California law. Strict liability may be applied even if Defendants' acts have violated only one of the three provisions set forth above.

78. Pursuant to *California Business & Professions Code* § 17203, Plaintiffs seek an order from this Court prohibiting Defendants from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and/or ordering that Defendants perform their obligations under the law and cancel any illegal obligations.

79. Plaintiffs additional request an order from this Court requiring that Defendants disgorge profits and return or pay to Plaintiffs all of Defendants' ill-gotten gains obtained from the illegal transactions, and/or pay restitution, including the amount of monies that should have been paid if Defendants complied with their legal obligations, or, as equity requires.

MICHAEL F. FRANK, ATTORNEY AT LAW
9903 Santa Monica, Suite 924
Beverly Hills, CA 90212
(310) 277-2559

80. Plaintiff further requests a court order that an asset freeze or constructive trust be imposed over all monies in Defendants' possession which rightfully belong to Plaintiffs.

### SEVENTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (Plaintiffs against Defendants)

81. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-80.

82. By virtue of the egregious and illegal acts of Defendants as described above, Defendants have been unjustly enriched in an amount to be proven at trial.

83. Defendants' retention of monies gained through its deceptive business practices, infringements, acts of counterfeit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

### EIGHTH CLAIM FOR RELIEF
### FEDERAL TRADEMARK INFRINGEMENT
### (Plaintiffs against Defendants)

84. Plaintiffs repeat and re-allege every allegation set forth in paragraphs 1-83.

85. Defendants had constructive notice that Plaintiffs had sought and obtained a registered trademark of the Mark2.

86. Defendants used the Publication containing the Mark2 in their Series.

87. Defendants obtained the Mark2 by displaying the Publication used in the Series and at least five such magazines are prominently visible in the Series..

88. Defendants knew who owned and created the Mark2 from the 2013 Publication itself used in the Series and from a simple trademark search on the USPTO.gov website.

89. Defendants did not and failed to obtain the consent or authorization of Plaintiffs as the owners and creators of the Mark2 since 2001 to commercially distribute and market the Mark2 as part of the Series and also used in the Series for effect.

90. Defendants intentionally and knowingly used in commerce the original, reproduction, counterfeit, copy and/or colorable imitation and exact representation of Plaintiffs' Mark2 in connection with the use, sale, offering for sale, distribution, dissemination, product, and advertising of Plaintiffs' Mark2 and used in the Series.

15
Complaint for Damages

91. Defendants continued and knowing use of Plaintiffs' Mark2 without Plaintiffs' consent and authorization constitutes intentional infringement of Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' trademarks in violation of section 32 of the *Lanham Act,* 15 *U.S.C.* § 1114 for which federal registration was obtained.

92. Plaintiffs for violation and/or willful violation seek (1) defendants' profits, (2) any damages sustained by the Plaintiffs, and (3) the costs/fees in this action, up to treble actual damages, and Plaintiffs may elect to recover statutory damages if available (15 *U.S.C. §* 1117).

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

A. For damages in an amount to be proven at trial for trademark infringement under 15 *U.S.C.* § 1114/*Lanham Act* §43(a);

B. For damages in an amount to be proven at trial for copyright infringement under 17 *U.S.C. §* 501(a);

C. For damages in an amount to be proven at trial for false designation of origin under 15 *U.S.C.* § 1125(a);

D. For damages in an amount to be proven at trial for trademark dilution under 15 U.S.C. § 1125(c.);

E. For damages in an amount to be proven at trial for copyright infringement and violation of common law under *California Civil Code* § 980;

F. For damages to be proven at trial for common law unfair competition;

G. For damages in an amount to be proven at trial for unfair, fraudulent and illegal business practices under *Business and Professions Code* § 17200;

H. For disgorgement of Defendants' profits under 15 *U.S.C.* §1117(a);

I. For an injunction by this Court prohibiting Defendants from engaging or continuing to engage to the unlawful, unfair, or fraudulent business acts or practices described herein;

J. For an order from the Court requiring that Defendants provide complete

accountings and for equitable relief, including that Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and or pay restitution, including the amount of monies that should have been paid if Defendants' complied with their legal obligations, or as equity requires;

K. For an order from the Court that an asset freeze or construction trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiffs;

L. For destruction of the infringing video Series and recall any downloads and streamed and retained copies and recall and remove all advertising on all mediums including the internet world wide web on all websites containing advertising and on the Netflix website and any billboards or other advertising medium including direct customer notifications or presented on commercials on Netflix or other stations or medium;

M. For treble damages suffered by Plaintiffs as a result of the willful and intentional infringements and acts of counterfeiting engaged in by Defendants, under 15 *U.S.C.* §1117(b);

N. For damages in an amount to be proven at trial for unjust enrichment;

O. For Plaintiffs' reasonable attorney fees;

P. For all costs of suit;

Q. For punitive and exemplary damages in an amount to be proven at trial;

R. For any declaratory relief as required or needed pursuant to *Cal. Code Civ. Proc.* § 1060 and 11 U.S.C. § 2201;

S. For either damages or recovery as to (1) defendants' profits, (2) any damages sustained by the plaintiffs, and (3) the costs/fees of the action OR may elect statutory damages for trademark infringement of a registered mark; and

T. And for such other and further relief as the Court may deem just and equitable.

MICHAEL F. FRANK, ATTORNEY AT LAW

Dated: July 16, 2020              By:  /s/ Michael F. Frank
                                      Michael F. Frank, Esq.
                                      Attorneys for Jackson and HWM

**DEMAND FOR JURY TRIAL**

Plaintiffs respectfully demand a trial by jury in this action.

MICHAEL F. FRANK, ATTORNEY AT LAW

Dated: July 16, 2020      By: _____/s/ Michael F. Frank_____
                                Michael F. Frank, Esq.
                                Attorneys for Jackson and HWM