1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10

PRATHER JACKSON,                    Case No. 2:20-CV-06354-MCS-GJS
HOLLYWOOD WEEKLY
MAGAZINE, LLC,                      **ORDER GRANTING DEFENDANT'S
                                    MOTION TO DISMISS [25]**

                Plaintiffs,

        v.

NETFLIX, INC.; IMAGINE
TELEVISION, LLC, a Delaware
limited liability company dba
IMAGINE TELEVISION STUDIOS;
CBS TELEVISION STUDIOS aka
CBS TELEVISION STUDIOS, INC., a
Delaware Corporation; and DOES 1-
10, Inclusive,

                Defendants.

        Defendant Netflix, Inc. filed a Motion to Dismiss ("Motion") on November 23,
2020. Mot., ECF No. 25. Plaintiffs Hollywood Weekly Magazine, LLC and Prather
Jackson filed an Opposition and Netflix filed a Reply. Opp., ECF No. 28; Reply, ECF
No. 32. The Court deems this matter appropriate for decision without oral argument.
*See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Motion is **GRANTED**.

## I.  FACTUAL BACKGROUND

Jackson is the founder and publisher of Hollywood Weekly Magazine ("HWM") who claims to own two trademarks: "Tiger King" ("Mark 1") and "Hollywood Weekly" ("Mark 2"). First Amended Complaint ("FAC") ¶¶ 7, 18, ECF No. 24. "Netflix is the writer, producer, owner and distributor of a streaming video 8-episode series created in 2020" titled "Tiger King: Murder, Mayhem and Madness" (the "Documentary"). *Id.* ¶ 13. Mark 1 "was coined by Plaintiffs in 2013" and "used exclusively in connection with Plaintiffs' numerous magazines" which profiled Joseph Maldonado-Passage, known publicly as the "Tiger King." *Id.* ¶ 18. Mark 2 "is used exclusively in connection with branding Plaintiffs' publication and promotional events, and is prominently visible across the cover of each magazine." *Id.* ¶ 21. For example, "Tiger King" appears in the table of contents of HWM's April 2013 issue containing an article titled "Joe Exotic – Born to Save the Wild." [1] RJN Ex. 2. HWM's May 2016 issue contains an article titled "Joe Exotic – America's Independent Choice for President" and a 2018 special edition is titled "Joe Exotic – The Mission Liberating Oklahoma." RJN Exs. 3-4.

Plaintiffs obtained a trademark registration for Mark 2 in 2017. *See* Trademark Registration No. 5244222, RJN Ex. 8. Plaintiffs applied for a trademark registration for Mark 1 on July 2, 2020. *See* Trademark App. Ser. No. 90033173, RJN Ex. 9. The United States Patent and Trademark Office ("USPTO") issued a non-final office action refusing registration of Mark 1 on August 5, 2020. *See* Non-Final USPTO Office Action, RJN Ex. 10. Plaintiffs allege infringement "of four feature exposes written by and/or assigned to Plaintiffs between 2013 and 2018" that chronicle "the life of Joe Exotic" and use Marks 1 and 2. FAC ¶ 23. Plaintiffs allege they own two copyright registrations, assigned numbers TX0008866617 and VA0002206086. *Id.* ¶ 24.

/ / /

---

[1] Exhibits referenced in Netflix's Request for Judicial Notice ("RJN," ECF No. 26) are attached to the Declaration of Emily F. Evitt ("Evitt Decl.," ECF No. 25-1).

2

1       The Documentary was "filmed from 2015 through 2019 and debuted in 2020."

2  *Id.* ¶ 35. Mark 1 is in the Documentary's title, subtitle, and "throughout the video." *Id.*

3  ¶ 37. Netflix used Mark 1 in the Documentary without Plaintiffs' consent despite

4  Plaintiffs inventing, creating, disseminating, and publishing Mark 1 in 2013. *Id.* ¶ 143.

5  Netflix's unauthorized use of Mark 1 and Mark 2 resulted in Plaintiffs losing

6  advertisers, customers, and reputation, among other things. *Id.* ¶¶ 39, 130, 196, 215-18.

7       Netflix lodged a mutually agreed-upon flash drive containing indisputably

8  authentic and relevant excerpts of the Documentary. Not. of Manual Filing, ECF No.

9  27. These excerpts depict "every instance where 'Tiger King' and *Hollywood Weekly*

10  *Magazine* appear (aside from the Documentary's title)." Evitt Decl. ¶ 8. The

11  Documentary shows that Maldonado-Passage has sold products branded "Tiger King"

12  and that he starred in a reality show called "Joe Exotic Tiger King." Documentary

13  Episode One ~16, 46, Episode Four ~7-8. Maldonado-Passage refers to himself as

14  "Tiger King" throughout the Documentary and the phrase "Tiger King" often appears

15  by itself or in conjunction with other words referring to Maldonado-Passage. *See*

16  *generally id.* Many people refer to Maldonado-Passage as "Tiger King" in the

17  Documentary. *Id.* In the Documentary's first episode, Maldonado-Passage poses next

18  to HWM's May 2016 issue, refers to HWM, and the May 2016 and April 2013 issues

19  briefly appear behind Maldonado-Passage. *Id.* Episode One ~16. In the fourth episode,

20  Maldonado-Passage autographs copies of HWM's April 2013 issue and five copies of

21  the magazine are shown on his desk. *Id.* Episode Four ~10. The fifth episode depicts

22  Maldonado-Passage supporters holding up "Joe Exotic - 2016 - For President" bumper

23  stickers, a campaign shirt, and HWM's May 2016 issue. *Id.* Episode Five ~7. A banner

24  featuring HWM's logo is also seen throughout the Documentary. *See generally id.*

25       Plaintiffs bring claims for: **(1)** federal trademark infringement under the Lanham

26  Act based on the Documentary's use of the phrase "Tiger King"; **(2)** federal copyright

27  infringement based on Netflix's unauthorized use of the phrase "Tiger King" and the

28

"Publication";[2] **(3)** false designation of origin under the Lanham Act based on Netflix's use of the phrase "Tiger King"; **(4)** trademark dilution under the Lanham Act based on Netflix's use of the phrase "Tiger King"; and **(5)** federal trademark infringement under the Lanham Act based on Netflix's use of Mark 2. FAC ¶¶ 107-262.

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

There are two instances in which courts may consider information outside of the complaint: judicial notice and incorporation by reference. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicial notice allows courts to consider a fact that is not subject to reasonable dispute because it is generally known within the territory or can be determined from sources of unquestionable accuracy. Fed. R. Evid. 201. Incorporation by reference allows a court to consider documents which are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of unquestioned authenticity by either party. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

---

[2] Plaintiffs define "Publication" as "the subject work of art subject publication in this Complaint." FAC ¶ 8.

## III.   REQUEST FOR JUDICIAL NOTICE

Netflix asks the Court to consider excerpts of different editions of HWM and the Documentary. RJN. Netflix also seeks judicial notice of Copyright Catalog entries from the Copyright Office's website; a record from the USPTO's Trademark Electronic Search System; Plaintiffs' trademark application for Mark 1; and a non-final USPTO office action pertaining to that application. *Id.* The Court considers the Documentary excerpts because there is no dispute as to their authenticity, they are the foundation of Plaintiffs' claims, and the parties agree to their consideration. Evitt Decl. ¶ 8; *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1126-28 (C.D. Cal. 2007) (where plaintiff alleged that defendants' television show infringed copyright, court considered copies of show and could "consider the content of the show as a [sic] documentary facts whose contents are alleged in the complaint"). Because the magazine excerpts are similarly agreed on, referenced extensively in the FAC, and form the basis of Plaintiffs' claims, the Court considers them. Evitt Decl. ¶¶ 3-7; *Gilbert v. New Line Prods., Inc.*, 2009 WL 7422458, at *2 (C.D. Cal. Nov. 16, 2009) (taking judicial notice of "copyrighted versions of Plaintiff's work as well as Defendants' movie" where there were "no disputes as to the authenticity of the works"). The Court considers the remaining documents because they are indisputably authentic, relevant to Plaintiffs' claims, and on government websites. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities…, and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein"); *Bhasin v. Pathak*, 2013 WL 1871508, at *2 (C.D. Cal. May 3, 2013) (taking judicial notice of records on USPTO website, as they were public records). The Court declines Plaintiffs' unfounded request to consider "not critical facts" Plaintiffs offer "simply for context." Plaintiffs' RJN, ECF No. 29; *Santa Monica Nativity Scenes Cmte. v. City of Santa Monica*, 784 F.3d 1286, 1298 n.6 (9th Cir. 2015) (denying requests for judicial notice "on the grounds that the documents to be noticed are irrelevant") (citation omitted).

## IV.   DISCUSSION

Netflix argues that: **(1)** the First Amendment bars Plaintiffs' Lanham Act claims; **(2)** Plaintiffs' federal copyright infringement claim does not adequately allege infringement; and **(3)** the Documentary's use of Plaintiffs' magazines is fair use.

### A. The First Amendment's Impact on Plaintiffs' Claims

Plaintiffs bring Lanham Act claims in their first, third, fourth, and fifth claims. Netflix argues that any unauthorized use with respect to these claims is protected by the First Amendment under the test in *Rogers v. Grimaldi,* 875 F.2d 994 (2d Cir.1984), adopted by *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894 (9th Cir. 2002). As stated in *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 260-61 (9th Cir. 2019):

> We use the *Rogers* test to balance the competing interests at stake when a trademark owner claims that an expressive work infringes on its trademark rights. The test construes the Lanham Act to apply to expressive works "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." [875 F.2d] at 999. "[T]hat balance will normally not support application of the Act, unless the [use of the mark] has no artistic relevance to the underlying work whatsoever, or ... explicitly misleads [consumers] as to the source or the content of the work." *Id.*

Under the *Rogers* test, "[a]n artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable 'unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless it explicitly misleads as to the source or the content of the work.'" *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,* 547 F.3d 1095, 1099 (9th Cir. 2008) (alterations omitted) (quoting *MCA Records,* 296 F.3d at 902).

#### 1.  *Whether Rogers Applies*

The Court first determines that Plaintiffs' first, third, fourth, and fifth claims are subject to *Rogers*. The Ninth Circuit applies *Rogers* to Lanham Act claims, often at the Rule 12 stage. *E.S.S. Entertainment*, 547 F.3d at 1098, 1101 (applying *Rogers* to Lanham Act § 1125(a) claim); *MCA Records,* 296 F.3d at 902 (applying *Rogers* to

trademark infringement claim); *VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming Rule 12 dismissal of Lanham Act claims under *Rogers*); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013) (affirming Rule 12 dismissal of Lanham Act claims, noting that Ninth Circuit has "consistently employed the *Rogers* test in § 43(a) cases involving expressive works since *MCA,* including where the trademark or other identifying material in question was used in the body of a work rather than in the title."); *see also Zella,* 529 F. Supp. 2d at 1130 ("The Court may assess copyright infringement as a matter of law on [a] motion to dismiss.")

Plaintiffs argue that a "documentary may not be a transformative work" and therefore does not enjoy First Amendment protection. Opp. 17 n.7 (citing *De Haviland v. FX Networks, LLC,* 21 Cal. App. 5th 845 (2018)). But as Plaintiffs' own authority makes clear, the Documentary is protected by the First Amendment regardless of how Plaintiffs choose to categorize it. *De Haviland,* 21 Cal. App. 5th at 849-50 ("The First Amendment protects [] expressive works and the free speech rights of their creators. Some of these works are fiction. Some are factual. And some are a combination of fact and fiction. That these creative works generate income for their creators does not diminish their constitutional protection."); *see also MCA Records,* 296 F.3d at 906 ("If speech is not purely commercial—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection.")[3] In a similar line of argument, Plaintiffs contend that *Rogers* does not apply because Netflix used Plaintiffs' marks to promote the Documentary. Opp. 13-14. This argument is foreclosed by Ninth Circuit precedent. *Twentieth Century Fox Television v. Empire Distribution, Inc.*, 875 F.3d 1192, 1196-97 (9th Cir. 2017) ("Although it is true that these promotional efforts technically fall outside the title or body of an expressive work, it requires only a

---

[3] That the Documentary is not purely commercial speech defeats Plaintiffs' trademark dilution claim. *Mattel*, 296 F.3d at 906-07 ("Barbie Girl is not purely commercial speech, and is therefore fully protected."); *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, 2011 WL 12877019, at *8 (C.D. Cal. May 11, 2011) ("Because . . . Disney's use of the Stewart Surfboards trademark has some artistic relevance, it is not purely commercial. It is therefore not actionable as trademark dilution.")

minor logical extension of the reasoning of *Rogers* to hold that works protected under its test may be advertised and marketed by name, and we so hold… Fox's promotional activities, including those that generate revenue, are auxiliary to the television show and music releases…") Finally, Plaintiffs heavily cite the likelihood-of-confusion test, inferring that it precludes application of *Rogers*. Opp. 11-13, 15-17. This argument contradicts the very Ninth Circuit jurisprudence on which Plaintiffs rely. *E.S.S. Entm't*, 444 F. Supp. 2d at 104 ("[W]hen First Amendment interests are implicated, the *Rogers* 'explicitly misleading' standard applies, not the traditional 'likelihood of confusion' test.") (quoting *MCA Records,* 296 F.3d at 900) ("Our likelihood-of-confusion test generally strikes a comfortable balance between the trademark owner's property rights and the public's expressive interests. But when a trademark owner asserts a right to control how we express ourselves ... applying the traditional test fails to account for the full weight of the public's interest in free expression"). The Court therefore considers Plaintiffs' first, third, fourth, and fifth claims under the *Rogers* test's two prongs. *E.S.S. Entm't,* 547 F.3d at 1099 (a plaintiff must show that "the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance," that the mark's use "explicitly misleads as to the source or the content of the work.'")

## 2. *Artistic Relevance*

Plaintiffs argue that the Tiger King mark is not artistically relevant because the Documentary is not about HWM but, rather, "[i]t is about Joe Exotic." Opp. 18. According to Plaintiffs, if the Documentary "was about [HWM], then use of *The Tiger King* would be relevant to the underlying work because it shows the creativity" of HWM "and its association with *The Tiger King*." *Id.* 17. This argument ignores Ninth Circuit precedent stating that a "title may have artistic relevance by linking the work to another mark… or it may have artistic relevance by supporting the themes and geographic setting of the work." *Empire*, 875 F.3d at 1199. "Reference to another work may be a component of artistic relevance, but it is not a prerequisite." *Id.*

///

1   Contrary to Plaintiffs' argument, use of the Tiger King mark must only have
2   "some relevance" to the Documentary to satisfy the artistic relevance prong. *E.S.S.*
3   *Entm't,* 547 F.3d at 1100 (stating that "the level of relevance merely must be above
4   zero.") The Documentary's use of the Tiger King mark satisfies this "low threshold."
5   *Id.* By both parties' accounts, the Documentary chronicles the life and business of Joe
6   Exotic, known publicly as the Tiger King, who starred in a television series titled "Joe
7   Exotic Tiger King" and sold products branded "Tiger King." *MCA Records,* 296 F.3d
8   at 899, 901 (finding artistic relevance in use of the "Barbie" trademark in a song about
9   Barbie). It is beyond question that the Tiger King mark's relevance is "above zero" and
10  therefore satisfies the *Rogers* test's artistic relevance prong.

### 3. *Explicitly Misleading*

12  Because the Tiger King mark has some relevance to the Documentary, Netflix's
13  use is unprotected only if "it explicitly misleads as to the source or the content of the
14  work." *E.S.S. Entm't,* 547 F.3d at 1099. "This prong of the test points directly at the
15  purpose of trademark law, namely to 'avoid confusion in the marketplace by allowing
16  a trademark owner to prevent others from duping consumers into buying a product they
17  mistakenly believe is sponsored by the trademark owner.'" *Id.* at 1100 (internal
18  quotations omitted). Thus, the relevant question is whether Netflix's use of the mark
19  would make the public believe that Plaintiffs were "somehow behind the [work] or that
20  [they] sponsor[] [the work]." *Id.* ("[T]he mere use of a trademark alone cannot suffice
21  to make such use explicitly misleading.")

22  Plaintiffs argue that the Documentary's use of the Tiger King mark tricked
23  customers and advertisers into believing the Documentary is associated with HWM.
24  Opp. 17-18. But construing the FAC in Plaintiffs' favor, it offers no allegations rising
25  to the level of explicit deception on Netflix's behalf. *Novalogic, Inc. v. Activision*
26  *Blizzard*, 41 F. Supp. 3d 885, 901 (C.D. Cal. 2013) ("To be 'explicitly misleading,' a
27  defendant's work must make some affirmative statement of the plaintiff's sponsorship
28  or endorsement, beyond the mere use of the plaintiff's name or other characteristic.")

(citations omitted). Plaintiffs instead rely on unsupported legal conclusions that fall far short of the affirmative representation required to satisfy the second prong of the *Rogers* test. *See, e.g.,* FAC ¶ 218 ("Defendants' egregious and intentional use and sale of the streaming Series bearing Plaintiffs' Mark1 in the Series title and within the streaming Series itself unfairly competes with the Plaintiffs and is likely to cause confusion, mistake, association, or to deceive, mislead, betray, and defraud customers, advertisers, and readers to believe that the substandard and dramatic streaming Series production is somehow associated with the Plaintiffs…"); *see also, e.g., Rogers,* 875 F.3d at 1001 (stating that a work is "explicitly misleading" only if it contains an "explicit indication," "overt claim," or "explicit misstatement" that it is sponsored by the owner of the mark); *MCA Records,* 296 F.3d at 902 (concluding that use of "Barbie" trademark in song title was not explicitly misleading because "it does not, explicitly or otherwise, suggest that it was produced by Mattel"). Aside from bare legal conclusions, Plaintiffs identify no explicit statement in the Documentary to suggest Plaintiffs' sponsorship. A review of the Documentary confirms that scenes Plaintiffs rely on to support their sponsorship theory amount to nothing more than the type of "mere use" protected under *Rogers*. *See, e.g.,* Documentary Episode One ~16, Episode Four ~10, Episode Five ~7. Because the work is not explicitly misleading, it is protected under the *Rogers* test.

Plaintiffs' fifth claim alleges Netflix infringed Mark 2 because the Documentary refers to HWM and depicts its cover. FAC ¶¶ 221-262. Plaintiffs stress that they are omitted from the Documentary's credits and complain that Netflix could have used a fictional magazine if it did not intend use Plaintiffs' marks for commercial gain. *Id.* ¶ 234. Plaintiffs' fifth claim fails under *Rogers* for the same reasons as their other Lanham Act claims—the Documentary's use of the magazine has artistic relevance and the FAC offers no allegations supporting that Netflix explicitly misled consumers. Plaintiffs' alleged lack of credit in the Documentary has no bearing on their Lanham Act claims. *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (Section 1125(a) does not prevent unaccredited copying: "the phrase 'origin of goods' in the Lanham Act

… refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods.")

Hence, Netflix is protected under *Rogers* because Plaintiffs' marks are artistically relevant and Netflix's use did not explicitly mislead. Netflix's Motion to Dismiss Plaintiffs' first, third, fourth, and fifth claims is therefore **GRANTED**, and those claims are **DISMISSED without leave to amend** because amendment would be futile. *Brown*, 724 F.3d at 1248 (affirming grant of motion to dismiss Lanham Act claims on *Rogers* grounds, with prejudice, holding that the use was artistically relevant and that "[t]here is simply no allegation that [defendants] explicitly misled consumers").

### B. Federal Copyright Infringement (Claim II)

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). A copyright infringement plaintiff "bears the burden of proving copyright ownership." *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* 654 F.3d 958, 962 (9th Cir. 2011).

Plaintiffs' second claim alleges copyright infringement under 17 U.S.C. § 501(a) based on Netflix's alleged infringement of the copyright in "the Publication," registration numbers "*TX0008866617* and *VA0002206086*." FAC ¶¶ 149-50. (emphasis in original). Plaintiffs clarify that the "Publication consists of four magazines containing four feature exposes (one in each) written by and/or assigned to Plaintiffs between 2013 and 2018" and allege that "Netflix prominently featured the Publication (i.e. the four magazines spread out in [the Documentary] and reproduced its content, namely *The Tiger King* title, and exploits same throughout [the Documentary] and promotional materials and its title." *Id.* ¶¶ 148, 158. The FAC continues: "Netflix copied Plaintiffs' valid copyrighted materials also by placing the magazines" in the Documentary, "including at least one fictionalized scene, which was streamed at least 64 million times and such scene was for effect and to gain the Plaintiffs' readership and make use of the

11

HWM magazine's popularity." *Id.* ¶ 169; *see also id.* ¶ 185 ("Netflix intentionally and knowingly reproduced, counterfeited, copied, displayed, based upon, used as a blueprint, and took excerpts of the Publication").

These allegations make clear that Plaintiffs' FAC lacks well-pled facts from which it is plausible to conclude that Plaintiffs own a valid copyright that Netflix infringed. *Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'") (citations omitted). Plaintiffs instead identify registration numbers and aver legal conclusions concerning Netflix's infringement of the "Publication," unintelligibly defined as "the subject work of art subject publication in this Complaint." FAC ¶¶ 8, 147-188; *see also Iqbal,* 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Despite the FAC's length and prior opportunity to amend, Plaintiffs inexplicably fail to provide cogent details concerning what works their registrations cover, or allege which parts of the copyrights Netflix infringed, when, and through what conduct. *Imageline, Inc. v. CafePress.com, Inc.,* 2011 WL 1322525, *4 (C.D. Cal. Apr.6, 2011) ("The only allegations [of copyright infringement]... are nothing more than legal conclusions of the type prohibited by *Iqbal* and *Twombly.*") While Plaintiffs' Opposition attempts to clarify the factual bases for their copyright claim, these facts are absent from the FAC and the Court disregards them. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("The 'new' allegations contained in the [opposition] are irrelevant for Rule 12(b)(6) purposes.") As these deficiencies are enough to warrant dismissal, the Court need not address Netflix's alternative arguments.

Netflix's Motion to Dismiss Plaintiffs' second claim is therefore **GRANTED**. Out of an abundance of caution, and given the Ninth Circuit's policy of granting leave

to amend with "extreme liberality," *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted), Plaintiffs may amend this claim.

## V. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. Plaintiffs' first, third, fourth, and fifth claims are **DISMISSED without leave to amend**. Plaintiffs' second claim is **DISMISSED with leave to amend**. Plaintiffs may file a Second Amended Complaint no later than December 21, 2020, if they can do so consistent with Federal Rule of Civil Procedure 11(b) and this Order. Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion.

**IT IS SO ORDERED.**

Dated: December 9, 2020

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

13